## EYDE v LANSING TOWNSHIP

Docket No. 48319. Submitted March 3, 1981, at Lansing.—Decided April 10, 1981. Leave to appeal applied for.

Patrick Eyde and Michael Eyde brought an action against the Charter Township of Lansing, the Drainage Board for the Remy-Chandler Intercounty Drain and the Augmented Drainage Board for the Remy-Chandler Intercounty Drain, challenging the validity of certain special assessments levied against plaintiffs' real property. The township moved for summary judgment and for accelerated judgment, which motions were granted, Ingham Circuit Court, Michael G. Harrison, J. Plaintiffs appeal. *Held:*

1. The trial court held that plaintiffs' claims under Count I of their complaint more properly should have been asserted against defendant Drainage Boards and thus properly granted the township's motion for summary judgment.

2. The trial court properly held that jurisdiction over plaintiffs' claims against the township in Count II of their complaint lay with the Tax Tribunal and properly granted accelerated judgment.

3. The trial court did not err in holding that § 539 of the Drain Code is constitutional.

Affirmed.

1. TAXATION — TAX TRIBUNAL — JURISDICTION — CONSTITUTIONAL LAW — STATUTES.

The Michigan Tax Tribunal has exclusive and original jurisdiction for review of special assessments and jurisdiction to review cases arising under property tax laws which were formerly reviewable by a circuit court or the State Tax Commission including claims involving constitutional issues (MCL 205.731, 205.741; MSA 7.650[31], 7.650[41]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, State and Local Taxation § 787.
[2] 2 Am Jur 2d, Administrative Law §§ 597, 602, 603.
[3] 70 Am Jur 2d, Special or Local Assessments §§ 10, 89.

2. ADMINISTRATIVE LAW — CONSTITUTIONAL LAW — REMEDIES.

> The presence of constitutional issues does not excuse the exhaustion of administrative remedies where there are other issues in controversy.

3. TAXATION — SPECIAL ASSESSMENTS — CONSTITUTIONAL LAW — STATUTES.

> A statute which provides for special assessments against property owners of especially-benefited land is not unconstitutional because it does not provide on its face for the alteration or correction of the special-assessment roll after an objection hearing where the opportunity for effective objection is provided in a separate statute (MCL 41.724, 280.539; MSA 5.2770[54], 11.1539).

*Lester N. Turner, P.C.* (by *Robert E. McCarthy)*, for plaintiffs.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Michael A. Eschelbach)*, for defendants.

Before: M. F. CAVANAGH, P.J., and J. H. GILLIS and ALLEN, JJ.

PER CURIAM. This appeal involves the validity of special assessments levied against plaintiffs' lands for the widening and improvement of the Remy-Chandler Intercounty Drain and its tributaries pursuant to Chapter 21 of the Drain Code of 1956, MCL 280.1 *et seq.;* MSA 11.1001 *et seq.* On December 3, 1979, the circuit court for Ingham County entered an order granting summary judgment in favor of defendant Charter Township of Lansing (township) on plaintiffs' bill of complaint challenging said special assessments. From that judgment, plaintiffs appeal of right.

In October, 1975, the petition was filed pursuant to Chapter 21 of the Drain Code with the Director of the Michigan Department of Agriculture requesting the cleaning, widening, and improvement

of the Remy-Chandler Drain. Following the procedures set forth in Chapter 21 of the Drain Code and the holding of many meetings, the defendants Drainage Board and Augmented Drainage Board met on August 10, 1977, to hear objections on the apportionment of costs requiring defendant township to bear 37.95% of the costs of said drain. Plaintiffs contend that despite the fact they are major landowners of the township, they were not given notice reasonably calculated to reach them prior to the August 10, 1977, meeting at which a final order of apportionment of costs was approved.

Pursuant to the procedures set forth in § 539 of the Drain Code, MCL 280.539; MSA 11.1539, the township in turn then caused its 37.95% portion of the costs to be assessed, according to benefits, against the property owners of the especially-benefited land in the township. As a result of such proceedings, a special assessment was levied against the properties in the township owned by plaintiffs. It is the validity of the special assessment levied against plaintiffs' properties which is the subject of this appeal.

On February 15, 1979, plaintiffs filed a two-count bill of complaint in the Ingham County Circuit Court challenging the validity of the special assessments. Count I alleged numerous procedural defects in the statutory proceedings taken by defendants Drainage Board and Augmented Drainage Board. Count I further alleged that § 536 of the Drain Code, MCL 280.536; MSA 11.1536, which provides that a final order of determination of costs shall not be subject to attack except upon proceedings in certiorari brought within 20 days after the filing of such order, is unconstitutional. In Count I, plaintiffs requested that the Remy-Chandler Drainage District be declared void and

invalid, that the assessment by the drainage boards against the township be declared void and invalid and that the township be enjoined from collecting the amounts assessed against plaintiffs' lands. However, all of the allegations in Count I were directed against the two defendant drainage boards and none of the allegations were directed against defendant township.

In Count II, plaintiffs reiterated all of Count I. In addition, plaintiffs alleged that the special assessment levied by the township was invalid for numerous procedural irregularities, gerrymandering, factual errors, and because § 539 of the Drain Code, under the authority of which the township levied the assessment, was unconstitutional. Count II requested the same relief as Count I including "whatever relief equity and good conscience allow".

The township answered and moved for summary judgment with respect to Count I, asserting that the allegations contained therein were made against the drainage boards and not the township. As to Count II, the township moved for summary judgment pursuant to GCR 1963, 117.2(3). In a separate motion concerning Count II only, the township moved for accelerated judgment, asserting that exclusive jurisdiction over the claims of Count II lay in the Tax Tribunal.

On April 12, 1979, a hearing was held before Circuit Court Judge Michael G. Harrison, who issued a written opinion on October 24, 1979, holding that Count I stated no cause of action because the claims were "more properly assertable" against the drainage boards which directly implement the portions of the statute governing plaintiffs' claims. The court granted the township summary judgment on Count I. Judge Harrison

also held that jurisdiction over all of Count II, except the claim that § 539 of the Drain Code was unconstitutional, was not properly in the circuit court and granted accelerated judgment. Citing *Edros Corp v Port Huron,* 78 Mich App 273; 259 NW2d 456 (1977), he held that the Tax Tribunal had jurisdiction. The remaining issue was the constitutionality of § 539, the only part of Count II as to which accelerated judgment was not granted. The court found that § 539 did not deny any of plaintiffs' due process rights and granted summary judgment on the claim. From a second amended order entered December 3, 1979, implementing the written opinion, plaintiffs appeal of right.

Based on the foregoing statement of facts, three issues emerge on appeal: (I) Did the trial court err by granting summary judgment in favor of defendant township on Count I? (II) Did the trial court err by granting accelerated judgment in favor of defendant township on all of Count II except the issue of the constitutionality of § 539 of the Drain Code, MCL 280.539; MSA 11.1539? (III) Did the trial court err in holding § 539 of the Drain Code, MCL 280.539; MSA 11.1539, constitutional?

I

The trial court held, and we agree, that plaintiffs' claims under Count I are more properly assertable against the two defendant drainage boards. Those claims are still pending in the circuit court for Ingham County.[1] If plaintiffs should

---

[1] On February 15, 1979, the same day that the instant action was filed in circuit court, plaintiffs filed identical pleadings with the Tax Tribunal. On February 21, 1980, the Tax Tribunal denied the Eydes' motion to add the Remy-Chandler Intercounty Drainage District as a party defendant and *sua sponte* dismissed the action against the Drainage Board and Augmented Drainage Board on grounds that (1) appeal was not filed in a timely manner against the two boards and

eventually prevail against the drainage boards, the assessments levied by the township will be void and the township will have a legal duty to refrain from collecting the assessments. If the township persists in collecting the tax, the circuit court is fully empowered to enforce its orders against the township. Thus, no useful purpose is served in retention of jurisdiction against the township as to Count I even though the claims against the drainage boards are in circuit court.

## II

Plaintiffs contend that the circuit court and not the Tax Tribunal is the proper forum for the dual reasons that (1) administrative agencies and quasi-judicial agencies are without the power to decide constitutional questions, *Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946), *Xerox Corp v Detroit,* 64 Mich App 159; 235 NW2d 173 (1975), and (2) because the Tax Tribunal is a quasi-judicial agency with no equitable powers to provide plaintiffs with the equitable relief sought.

The once-established principle of law that an administrative agency should not review constitutional issues has, as to the Tax Tribunal, been eroded by recent statutory changes and decisions of this Court. When the Tax Tribunal was created, it was given the jurisdiction to review cases previously reviewable by either the circuit court or the State Tax Commission. MCL 205.741; MSA 7.650(41). Further, MCL 205.731; MSA 7.650(31) gives the Tax Tribunal exclusive and original jurisdiction over special assessments. In *Xerox Corp v Kalamazoo,* 76 Mich App 150; 255 NW2d 797

(2) the Eydes lacked standing to challenge the actions of the two boards. Appeal from the order of the Tax Tribunal was taken to the Court of Appeals and is now pending in Docket No. 52221.

(1977), this Court held that the statutory authority given the Tax Tribunal gave the tribunal the jurisdiction to consider a claim that the method of assessing property was unconstitutional. In *Henshaw v State Tax Comm,* 92 Mich App 585, 588; 285 NW2d 382 (1979), plaintiffs filed suit in circuit court seeking a refund of taxes paid and raising constitutional issues. The trial court ruled that it did not have jurisdiction and granted defendant's motion for accelerated and summary judgment saying:

"The Legislature intended such matters to be heard in the Tax Tribunal. While plaintiffs have raised certain constitutional issues in their complaint, such issues may nevertheless be raised before the tribunal with appeal by right to this Court."

Moreover, the presence of a constitutional issue does not excuse the exhaustion of administrative remedies where, as in the case before us, other issues are in dispute. *Attorney General v Diamond Mortgage Co,* 102 Mich App 322; 301 NW2d 523 (1980). See also *Buckeye Industries v Secretary of Labor,* 587 F2d 231, 235 (CA 5, 1979), *Spiegel, Inc v Federal Trade Comm,* 540 F2d 287, 294 (CA 7, 1976).

Plaintiffs attempt to minimize or distinguish *Xerox Corp* and *Henshaw, supra,* on grounds that the challenge in each case was only superficially constitutional. However, in the instant case the constitutional challenge made in Count I to § 536 of the Drain Code was at best indirect. Plaintiffs' bill of complaint does not attack § 536 directly but instead avers that the assessment roll made by defendant township was discriminatory in that it was imposed on property which received no special

benefit.[2] This is merely a claim packaged in constitutional language that plaintiffs' properties were not specially benefited as a result of the drainage project for which they were assessed. A similar claim was discussed and rejected by this Court in *Edros Corp, supra,* 279-280.

"Whether a special benefit has been conferred upon the property assessed is a question of fact. *Blades v Genesee County Drain Dist No 2,* [375 Mich 683; 135 NW2d 420 (1965)], *Soncoff v Inkster,* 22 Mich App 358; 177 NW2d 243 (1970). If plaintiff's property is specially benefited, and the benefit conferred corresponds to the assessment levied, the city council's actions are valid and the assessment, in turn, is nonconfiscatory. *The issue is one properly decided by the tax tribunal.* We refuse to hold that the body charged with reviewing special assessments cannot undertake to examine the very foundation upon which such assessments are made. To do so would be to preclude the full utilization of the tribunal's expertise in the area." (Emphasis added.)

Similarly, in the instant case, plaintiffs' claim of lack of proportionate benefits required the exercise of special expertise of the Tax Tribunal. Accordingly, we reject the argument that the Tax Tribunal is without jurisdiction to hear the constitutional questions raised in the instant case.

But is the Tax Tribunal an improper forum to

---

[2] "That the special assessment roll is arbitrary and discriminatory, and results in deprivation of due process of law. More particularly, the special assessment is made with respect to property receiving no special benefits as a result of the improvement. Consequently, the assessment exceeds the constitutional statutory limitations imposed upon the Charter Township of Lansing. Therefore, it results in the taking of property without due process of law. Further it is discriminatory, contrary to the Constitution of the State of Michigan and the Constitution of the United States, in that the properties of the Eydes, receiving no special benefit over and above those of other users of the Township, are being discriminated against with respect to the payment of such improvement charges."

decide the case because it has no equitable powers? That claim too was raised and rejected by the *Edros* Court which held that the tribunal's powers included ordering a refund of the taxes paid or " 'granting other relief or issuing writs, orders, or directives which it deems necessary or appropriate * * *' ". *Id.,* 278. However, plaintiffs argue that *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978), a case decided subsequent to and without mention of *Edros,* controls. There, in a two-to-one decision, the majority said:

"We note that since the Tax Tribunal has not been given general equitable powers, it is appropriate that this matter be decided in circuit court. Despite the Tax Tribunal's purported exclusive jurisdiction, MCL 205.701 *et seq.;* MSA 7.650(1) *et seq.,* where relief is sought which only a court of general equitable jurisdiction can provide, the action may properly be brought before such court." *Id.,* 669-670.

We do not consider *Romulus* dispositive. Plaintiffs there claimed fraud and misuse of government funds—elements not alleged in the instant case. Furthermore, its decisional value is suspect both because it was a split decision and because the Supreme Court granted leave in 406 Mich 976 (1979), stating:

"Leave to appeal granted June 22, 1979. The parties are directed to include among the issues to be briefed whether the Michigan Tax Tribunal is the only forum in which relief can be sought for allegedly illegal drain tax assessments (with consideration of the Court of Appeals determination in *Edros Corp v City of Port Huron,* 78 Mich App 273 [1977])."

Finally, to the extent that *Romulus* is contrary to

the decision in *Edros,* this panel rejects the holding in *Romulus.*[3] In our opinion, jurisdiction of the questions raised as to defendant township lay with the Tax Tribunal and not with the circuit court.

### III

Plaintiffs' brief assigns two reasons why the trial court erred in holding that § 539 of the Drain Code is constitutional. First, that the court erred as a matter of substantive law and, second, that since the court had already ruled jurisdiction lay in the Tax Tribunal it was inconsistent for the court to proceed to make a ruling on the constitutional question.

On the substantive issue we find no error. Plaintiffs' sole claim of unconstitutionality is that there is no provision on the face of § 539 providing for the alteration or correction of the special-assessment roll after an objection hearing. While this is true, opportunity for effective objection is provided in § 4 of the township spcial assessment act, MCL 41.724; MSA 5.2770(54). Since the opportunity for effective objection is provided, it is immaterial that it is contained in a separate statute. This fact was noted by the trial court. We find no error on the substantive issue.

As to the second objection, we find that plaintiffs misstate the position of the trial court. The trial judge did not rule that the court was without jurisdiction to hear *any* of the claims made in Count II. It ruled that it did not have jurisdiction on any of those matters except the constitutional challenge to § 539. Given the fact that the constitutional issue involved a "pure" issue of law and did not require fact-finding within the expertise of

---

[3] Briefs have been submitted and oral argument heard by the Supreme Court, and an opinion on the merits is pending.

the Tax Tribunal and in view of the fact that this Court finds no error on the merits of the ruling we find it unnecessary to determine whether the trial court was without jurisdiction to pass on the constitutional issue.

Affirmed. No costs, a question of public interest being involved.