SMITH v MOTORLAND INSURANCE COMPANY

Docket No. 68607. Submitted March 19, 1984, at Detroit.—Decided June 4, 1984. Leave to appeal applied for.

Ernestine Smith was injured in an automobile collision with an uninsured motorist. She brought a claim for benefits against her insurer, Motorland Insurance Company. The insurer denied benefits and the matter was submitted to arbitration. The arbitrators denied plaintiff's claim. Plaintiff then filed a motion to vacate the arbitration award in the Wayne Circuit Court. The court, Victor J. Baum, J., granted the motion to vacate the award, holding that the arbitrators had exceeded their powers as defined in the arbitration contract because the American Arbitration Association had not disclosed to the parties the corporate employment of one of the arbitrators selected. The court held that because of the failure of disclosure the panel had not been chosen in the manner required by the arbitration contract. Defendant insurer appealed from the vacation of the award. *Held:*

1. Arbitrators can be said to have exceeded their powers when they act beyond the material terms of the contract from which they primarily draw their authority or act in contravention of controlling principles of law. The arbitration herein was controlled by the rules of the American Arbitration Association. The trial court erred in holding that those rules require the association to disclose to the parties the same information regarding employment and prior experience of potential arbitrators as is provided to the association's selection committee. The rule requires an arbitrator, upon appointment to a particular case, to disclose any information which would suggest that he has an interest in the particular matter being arbitrated or is associated with any of the parties or attorneys involved.

2. Judicial review of alleged errors of law in arbitration decisions is limited to those which appear on the face of the award. Plaintiff's allegation on appeal that the arbitrators

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arbitration and Award § 90.
[2] 5 Am Jur 2d, Appeal and Error §§ 785, 786.
[3] 5 Am Jur 2d, Arbitration and Award § 145.

relied upon erroneous principles of law cannot be supported by examination of the face of the award.

Reversed.

1. ARBITRATION — POWERS OF ARBITRATORS — TERMS OF CONTRACT.

The standard by which it is determined whether arbitrators have exceeded their powers is whether they acted beyond the material terms of the contract from which they primarily draw their authority or in contravention of controlling principles of law.

2. APPEAL — RIGHT RESULT FOR WRONG REASON.

The Court of Appeals generally will affirm a trial court's decision arrived at for the wrong reasons so long as the right result is reached.

3. ARBITRATION — REVIEW — ERRORS OF LAW.

Judicial review of alleged errors of law in arbitration decisions is limited to those which appear on the face of the award.

*Posner, Posner & Posner* (by *Samuel Posner* and *Gerald F. Posner*), for plaintiff.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *Susan P. Ward*), and *Gromek, Bendure & Thomas* (by *James G. Gross*), of counsel, for defendant.

Before: M. J. KELLY, P.J., and BEASLEY and J. N. O'BRIEN,* JJ.

M. J. KELLY, P.J. Defendant appeals as of right from the trial court's vacation of an arbitration award of the American Arbitration Association (AAA) in which plaintiff's claim against defendant for no-fault benefits was denied. The trial court concluded that the arbitrators had exceeded their powers as defined in the arbitration contract and granted plaintiff's motion to vacate under GCR 1963, 769.9(1). We reverse.

Plaintiff, while insured under a policy with de-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

fendant Motorland Insurance Company, was injured in an automobile collision with an uninsured motorist on April 17, 1978. Defendant refused to pay benefits under the uninsured motorist provision of plaintiff's policy and arbitration proceedings resulted. Both parties were sent a list of the names of nine individuals qualified to serve as arbitrators. Three of the nine names were designated "plaintiff", three were designated "defendant", and three were designated "neutral". AAA was to select a three-person arbitration panel after the parties had been provided the opportunity to strike one name from each designation.

One of the names designated as neutral on the list of arbitrators was John Sheridan. He was subsequently selected by the AAA to serve as an arbitrator in this case. Sheridan stated in an affidavit submitted at the hearing on plaintiff's motion to vacate:

"That at the time of the hearing he was General Attorney and Assistant Secretary of American Motors Corporation and that approximately 15% of his time was devoted to supervising other attorneys whose responsibilities involved the defense of product liability cases brought against the corporation and its subsidiaries, and that the balance of the time was devoted to general corporate legal problems and secretarial responsibilities, including the supervision of attorneys handling litigation in which the corporation was plaintiff."

Sheridan further stated in his affidavit that he had been a "neutral" arbitrator with the AAA for a period of more than ten years and had, during 1957 through 1962, been an associate and then partner in a plaintiff-oriented firm. Sheridan's employment experience was not contained on the list supplied to the parties. Plaintiff returned the list to the AAA without crossing out any names.

The arbitration decision denying plaintiff's claim was issued October 6, 1981. On October 27, 1981, plaintiff filed her motion to vacate the award. One of the grounds alleged by plaintiff as a basis for vacating the award was that the arbitration panel had not been chosen in the manner required under the arbitration agreement because the AAA had failed to disclose to the parties Sheridan's association with AMC. Plaintiff further argued that Sheridan's employment was a material matter and was detrimental to the plaintiff since, according to her attorney's affidavit, Sheridan's name would have been struck from the list had he been aware that AMC was his employer. Sheridan, along with the defense arbitrator, voted to deny plaintiff benefits.

The trial court agreed with plaintiff's analysis and vacated the award under GCR 1963, 769.9(1)(c). Rule 769.9(1) provides:

"(1) Upon application of a party, the court shall vacate an award where:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was evidence partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(c) The arbitrators exceeded their powers; or

"(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing as to prejudice substantially the rights of a party."

In *DAIIE v Gavin,* 416 Mich 407, 431; 331 NW2d 418 (1982), the Supreme Court described the "standard by which all interested parties may measure whether a given misstep by arbitrators means that the 'arbitrators exceeded their powers' ". While

primarily focusing on the "magnitude of legal error" required to justify vacating awards under GCR 1963, 769.9(1)(c), the Court in *Gavin* noted:

"Thus, in discharging their duty, arbitrators can fairly be said to exceed their power whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." 416 Mich 434.

We believe that the issue raised in this case can best be characterized as whether the AAA or Sheridan acted beyond the material terms of the arbitration contract in rendering the decision against plaintiff.

The contract to arbitrate between plaintiff and defendant is part of the standard automobile insurance policy purchased by plaintiff and incorporates by reference the accident claim rules of the AAA. Section 9 of those rules provides in relevant part:

"Section 9. * * * No person shall serve as an Arbitrator in any arbitration in which that person has any financial or personal interest. * * * An Arbitrator shall disclose any circumstances likely to create a presumption of bias which might disqualify him * * * as an impartial arbitrator. Either party may advise the AAA of any reason why an Arbitrator should withdraw or be disqualified from serving."

The trial court found that § 9 required the AAA to disclose to the parties any information bearing on the neutrality of a potential arbitrator and that, because the AAA failed to note next to Sheridan's name his association with AMC and the type of legal work performed by him, Sheridan served in violation of the terms of the arbitration contract and thus exceeded his powers.

We do not agree with the trial court's interpretation of § 9 of the AAA rules of arbitration. The designation of an arbitrator as "plaintiff", "defense", or "neutral" is not, under the arbitration scheme, a prerogative left to any of the individual parties to the proceedings. According to the affidavits submitted at the hearing on plaintiff's motion to vacate by Albert A. Miller, an appointed member of the Arbitration Claims Tribunal Advisory Committee, and by Charlene Chase, Tribunal Claims Administrator, the committee twice a year carefully reviews all applications of local attorneys who seek to qualify as arbitrators. The committee is made up of a "broad cross-section of the local trial bar representing both claimants and defendants in tort and other litigation". If accepted, an applicant receives his or her designation only by unanimous agreement of the entire committee.[1] Moreover, according to Chase's affidavit, the AAA maintains a file on each arbitrator containing all relevant data on the arbitrator's employment history and experience and these files are available upon request to the parties involved in an arbitration.

We do not believe that § 9 of the arbitration rules requires either the AAA or potential arbitrators to provide the same information regarding employment and prior experience as had been provided the committee upon the arbitrator's application to the AAA. Instead, we construe § 9 as requiring the arbitrator to disclose to the parties, upon appointment to a particular case, any infor-

[1] According to counsels' representations at oral arguments on appeal, the procedures for designating an attorney were not expressly provided for in the 1979 arbitration rules, though the practice was then in effect. In 1981, the arbitration rules were revised and now formally describe the procedures as followed in 1979 for the selection and designation of arbitrators.

mation which might suggest that he or she has an interest in the particular matter being arbitrated or is associated with any of the parties or attorneys involved. For example, Sheridan was required to and apparently did disclose to the AAA and to the parties the fact that a member of the firm of attorneys representing the defendant had been a classmate of his in law school.

We believe that the task of designating arbitrators as neutral or plaintiff or defense-oriented is properly left to the AAA. The internal procedure utilized in 1979 and now formally in effect for the selection and designation of AAA arbitrators ensures the integrity and reliability of arbitration as a method for conflict resolution. John Sheridan's designation as a neutral was unanimously approved by even the plaintiff-oriented members of the committee and we find no basis to challenge that approval. Plaintiff has not persuaded us that § 9 of the AAA rules requires anything more than disclosure of an appointed arbitrator's particular connections to the case being arbitrated or to the individuals involved. On this basis, we reverse the trial court's order vacating the arbitration award issued in this case on October 6, 1981.

Plaintiff advanced several other arguments at the trial level in support of her motion to vacate the arbitration award. The trial court declined to address these issues. On appeal, plaintiff argues that if we should reject the reasoning relied upon by the trial court in vacating the arbitration award, the order should nevertheless be affirmed on one of these other grounds. We consider plaintiff's alternative arguments on the theory that this Court will generally affirm a trial court decision arrived at for the wrong reasons so long as the right result is reached. *DeSaele v Sterling Heights*

*(On Remand),* 123 Mich App 610, 618; 333 NW2d 496 (1982), *lv den* 417 Mich 1087 (1983).

Plaintiff argues that two of the arbitrators based their decisions on substantial errors of law. At the hearing on plaintiff's motion to vacate, plaintiff submitted the affidavit of the dissenting arbitrator, who stated that Sheridan and the defense-designated arbitrator had opined during deliberations that soft tissue injuries could never be considered serious impairment of bodily function and that plaintiff could not recover for economic loss without first establishing serious impairment. Both Sheridan and the defense-designated arbitrator responded with affidavits in which they denied basing their decision either on the belief that soft tissue injuries could never be considered serious impairment or on the belief that plaintiff could not recover economic losses without first establishing serious impairment.

The Supreme Court's decision in *DAIIE v Gavin* clearly limits judicial review of alleged errors of law in arbitration decisions to those which appear on the face of the award. 416 Mich 443, citing *Howe v Patrons' Mutual Fire Ins Co of Michigan,* 216 Mich 560, 570; 185 NW 864 (1921). The arbitration award in this case merely stated:

"The claim of Ernestine Smith against Motorland Insurance Company is hereby deemed denied."

The "remarks" sheet further indicated that:

"Petitioner failed to establish a serious physical impairment by a preponderance of the evidence related to the accident."

We believe that the decision in *DAIIE v Gavin*

was intended to preclude judicial review in precisely the type of case presented here. We cannot tell on the face of the award whether the majority of the arbitrators relied upon erroneous principles of law in reaching their decision or whether they found that plaintiff's injuries were not causally related to the accident. Evidence submitted at the arbitration hearing would amply support the latter disposition. The arbitrators' remarks may be similarly construed. We thus cannot say that the decision in this case was based on erroneous principles of law and decline to affirm the trial court's decision on this basis.

Plaintiff also argues that the arbitration award should be vacated because it was procured by undue means or because there was evident partiality on the part of Sheridan. GCR 1963, 769.9(1)(a) and (b). These arguments are variations of plaintiff's challenge to the designation of John Sheridan as neutral. We do not believe that Sheridan's involvement in products liability defense work necessarily requires that he be designated as defense oriented for purposes of no-fault arbitration disputes. Plaintiff has failed to present any other evidence impugning the impartiality of Sheridan and we thus decline to affirm the trial court's order on this ground as well.

Reversed.